Chief Justice Simpson
delivered the opinion of the Court.
Yager, was qualified as a deputy of Vincent Morgan, the sheriff of Washington county, and executed to his principal with Colter, and others as his sureties a bond of indemnity, conditioned that he should perform all the duties of deputy sheriff, from the February, Coun-Court 1835, until the February, County Court 1837, being the term for which Morgan, was commissioned as sheriff, and save Morgan, harmless and indemnify him against all losses or liabilities, which might arise from the misfesance or malfeasance of said deputy, and should in all things well and truly, perform the duties of deputy sheriff, in each and every particular, as required by law. The bond was executed on the 24th day of March, 1835.
Morgan, having died, this action was brought by his administrators against Colter, on said bond of indemnity, and the breaches assigned in the declaration are, first, that at the April, term, 1836, of the Washington County Court, the said Court in pursuance of an act of assembly approved the-day of--1836, authorizing the Court to levy on ad valorem tax, ordered that the sheriff should levy and collect twenty-five cents on each and every $100, at the ad valorem valuation on the property of the people of Washington county, as assessed by the commissioners for that year, and that as deputy sheriff, he had collected under this order, the sum of $3268, 21 cents, which he had failed to pay over. Second, that at the October, term, 1835, the County Court had levied on each and every tithable the sum of fifty cents, and that 12 97 tithables were placed *279 in the hands of said deputy, on which he collected the sum of $580 50, which he had failed to pay over* That in consequence of these defalcations, Morgan, and his sureties had been sued, and a judgment recovered against them for $13 15, subject to two credits of $30) and $89,76 cents, which judgment had been paid by Morgan, and his sureties.
A deputy sheriff who by his bond with surety to his principal, obligates himself to collect monies and pay over accoiding to law, and, who fails to do so, is liable to his principal for the debt; the principal need to wail to be sued himself before suing the deputy; but if he be sued, and subjected to damages and cost the whole may be recovered irom the deputy and his sureties, (3 B. Mon. 307.)
issues were joined by the parties on the pleas of non est factum, covenants performed, and non damnijicatus, and during the pendency of the suit, William ’ Prather, one of Morgan’s, administrators, having executed a re. lease to John Yocum, one of the sureties in the bond of indemnity, the release was set up and relied upon by Colter, in a plea of puis darrien continuance, to which the administrators’replied that its execution had been ■obtained by fraud, and an issue was made upon that allegation. A verdict and judgment were obtained by the plaintiff’s, for the sum of $914, in damages, and a motion fora new trial having been overruled, ihis, writ of error is prosecuted by Colter, to reverse the judgment.
If the deputy, collected money, and failed to pay it over, according to law, whereby a liability was imposed upon his principal, the latter had a right to institute an action immediately, upon the bond of indemnity, without waiting to he sued himself, and without having first discharged the liability. But, if the sheriff, or his sureties were subjected to costs and damages by suit, the whole amount which he or they were made to pay, may be'recovered by him, from his deputy, and his sureties, whether the same be paid by the principal, or by his sureties. Robertson, &c., vs Morgan's, adm’rs. (3 B. Mon. 307.) The averment therefore in the plaintiff’s declaration, that the judgment against the sheriff had been paid by him and his sureties, was sufficient to enable his administrators to maintain the action, and to demand such damages, and costs, as were recovered of him, and his sureties in the suit against them.
It is however, contended, that the testimony does not sustain the verdict of the jury, upon the issues formed *280 on the plea of non est factum, and on the question oj fraud, in the execution of the release, nor as to the amount for which it was rendered.
As it regards the execution of the bond of indemnity, the signature of Colter, as one of the obligors, was proved to be in his handwriting, and no testimony was introduced tending to establish the fact, relied upon to sustain the plea of non est factum, that alterations or additons had been made in the face of the bond, after it had been executed by him. The only witness who testified upon the subject stated that the body of the bond was all in his own handwriting, except the names of the obligors and the figures 24, being the day of the month on which it was executed. That however only proves that the witness wrote the bond, leaving blanks for the names of the obligors, and the date, to be filled up at the term of its execution. It does'not prove, that Col-ter, executed the bond before the blanks were filled, nor is there any other testimony tending to prove it, and the fair presumption, in the absence of testimony upon the subject, is, that the blanks were filled at the time of, or prior to its execution by the obligors.
The alledged fraud, in obtaining the execution of the release, was a question of fact for the jury to determine. They decided that fraud, had been practiced in procuring its execution, and unless that conclusion was wholly unauthorized by the testimony, their verdict cannot be disturbed upon this ground. The release that was first written was not executed. The releasor was informed that by its execution he would release the other obligors. Another release was prepared and executed ; and it was proved that by its execution the re-leasor did not intend to release Colter, but only to release Yocum, one of the obligors. Yocum, was examined as a witness, and testified that he knew the release that was executed would have the eflect to release the •other obligors in the bond, and that he did not communicate that fact to Prather. The release purports to have been executed in consideration of one dollar, and *281 that, according to the testimony had never been paid. The jury liad a right to infer from the testimony, that Yocum induced Prather, t.o believe that the release which ho executed would not have the legal effect to discharge the other obligors in the bond from their liability. The release that was first drawn he was informed would have that effect; it was not executed, but another one was substituted for it, which was executed under the belief by him as proved by Yocum, himself, that it would not release Colter, but would only operate to release Yocum, from his liability. Besides, good faith required that Yocum, should have apprized him of the effect of the release which he executed, when he knew, as he admits he did, that he labored under a delusion upon the subject.
A sheriff, in a proceed against him tor the de* falcation of hi* deputy in not paying over the county levy, is not liable for in« teiest accruing before the date of the judgment.
These facts, and circumstances, in connection with the additional fact that the consideration upon which the release was founded was merely nominal, justified the jury in their conclusion, that its execution was procured by fraud. And the Court did not err in refusing to instruct the jury, at the instance of the defendant, that if Prather, was advised of the legal effect of the release, before its execution, the law was for the defendant, because there was no testimony that such was the fact in relation to the release actually executed, and also because, its execution might have been fraudulently procured even -if Prather, had been advised of its legal effect.
The objection to the amount of the verdict and judgment seems however, to be more formidable. Yager’s defalcation as deputy, was proved to be $786,45 cents, by the only witness who testified upon the subject, and of that sum, there had been paid by Yager, in July, 1837, the sum of $295. By an order of the Washington Couuty Court, made at its May, term, 1837, the sheriff was directed to pay the money in his hands into Court, on the first day of its next June term.' If interest were computed from that time, the balance due afer deducting the credit of $295, would fall nearly one *282 hundred dollars below the amount of the verdict. But it was decided, in the ease of Graham, &c., vs the County Court of Washington, 9 Dana, 182, that ihe .sheriff in t'he proceeding against him for this defalcation of his deputy, was not liable for interest accruing before the date of the judgment, but only for the amount of levies unaccounted for. Interest therefore in this •case should be computed only from the time the judgment against the sheriff was recovered. The verdict then is for an amount mueh larger than the testimony authorized, even if the cost of the proceeding against the sheriff be included, which appears to be a few dollars only.
The sheriff is Ibound to discharge all the official duties imposed by law, ias well such as the law required at the date ofhis .official bond as thoes that may be thereafter imposed by law, and a -deputy who oblígales 'himself' to his principle to per-dorm all the duties of sheriff is bonne in the same way to his ,principle.
But the objection to the judgment most relied upon is, that the defalcation of the deputy was for the special ■levy authorized by the Legislature, and imposed by the County Court, after the execution of the bond of indemnity, and the surety therefore was not liable, as he •did not undertake that the deputy should do .more than the law required at the date .of t.he bond.
The collection of the oounty levy is part of the office duty of the -sheriff. The amount of ¡the levy is fixed annually by the County Courts,. The sureties may be presumed to contemplate the collection .of the county levy by the sheriff, .as laid by the County Court. The increase of -the levy imposes no.additional duty upon the sheriff; but that which is properly incident to the official, nor does the manner in which the County Court ' is,.authorized to collect the levy, whether by taxing the tithables., or by an .ad valorem tax upon property in the county, have that effect. If the Legislature should increase. the revenue tax, after a sheriff, had executed bis official bonds, could .it be .contended with.any plausibility, that th.e sureties were not liable, for the amount of the increased tax collected by -the sheriff. It is the official duty of the .she2'iff to-collect the revenue tax, and the county levy,, laid to meet the ordinaiy expenditures of th.e county, .the .amount of each to be subject dming his term of office, to legislative action upon the subject. *283 That the sheriff and his sureties, were liable for this special levy was decided by this Court, in the case of Graham, &c., vs the County Court of Washington, supra. T.ie liability of the deputy and his sureties depends npon the liability of the sheriff. The bond sued on was conditioned, to save him harmless and indemnify him from all losses which might arise from the misfeasance or malfeasance, of the deputy. The sureties of the deputy are therefore, clearly responsible for his failure to pay over the special levy collected by him. The only available objection therefore, is the one made to the amount ofNthe verdict, and for this error the judgment must be reversed.
Moorehead and Booker for plaintiff; Haskin, Thurman, and Shtick for defendants.
Wherefore the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.